IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-89-RJ

CHRISTINE MILLS,

   Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

   Defendant.

<u>O R D E R</u>

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-14, -16]. Claimant Christine Mills ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Briefing is complete, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on January 6, 2022, alleging disability beginning December 1, 2020. (R. 17, 181–89). The claim was denied initially and upon reconsideration. (R. 17, 65–86). A video hearing before an Administrative Law Judge ("ALJ") was held on July 27, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 17, 36–64). On December 19, 2023, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–35). On December 19, 2024, the

Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

2

forth in 20 C.F.R. § 416.920, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the application date. (R. 19). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, scoliosis, radiculopathy, cervical spondylosis with myelopathy, hip bursitis, osteopenia, trigger thumb, and obesity, and

3

the non-severe impairments of gastric procedure/colectomy, hemorrhoids, irritable bowel syndrome, gastroesophageal reflux disease (GERD), hypertension, vitamin B deficiency, vitamin D deficiency, angioedema, allergic rhinitis, hyperlipidemia, deep vein thrombosis, eczema, dental caries, urticaria, restless leg syndrome, and alcohol abuse. (R. 19–20). Claimant's chronic pain syndrome, fibromyalgia, and paresthesia of the foot were found to be non-medically determinable impairments. (R. 20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding that she had the ability to perform light work[1] with the following restrictions:

> occasionally lift, carry, push, and pull up to 20 pounds, frequently lift, carry, push, and pull up to 10 pounds as well as sit, stand, and walk about six hours each in an eight-hour workday. She can frequently push and pull with her lower extremities. The claimant can operate foot controls. She can occasionally climb ramps, stairs and never climb ladders, ropes, or scaffolds. The claimant can frequently reach.

(R. 20–27). In making this assessment, the ALJ found Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the medical evidence and other evidence in the record. (R. 26). At step four, the ALJ concluded Claimant could not return to her past relevant work as a cashier and stocker. (R. 27–28). Notwithstanding, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R. 28–29).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

## V. DISCUSSION

Claimant contends that the ALJ erred in formulating the RFC by failing to perform a function-by-function evaluation of Claimant's ability to perform manipulative activities, i.e., handling, fingering, and feeling. Pl.'s Br. [DE-14] at 5–10. The Commissioner counters that substantial evidence supports the ALJ's RFC and that no further limitations were required. Def.'s Br. [DE-16] at 6–14.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

5

Claimant testified at the administrative hearing that she cannot pick up anything heavier than five pounds, she has pain in her neck and upper back that radiates down her arms, she had surgery for trigger thumb and a cyst on her right hand, and she frequently drops items, for example a water bottle, that she tries to hold in either hand. (R. 55–57). The ALJ found Claimant's trigger thumb was a severe impairment but did not impose manipulative limitations on handling, fingering, or feeling in the RFC. (R. 19, 20–27).

In the RFC analysis, the ALJ did not explain why no manipulative limitations were warranted but referenced some evidence related to Claimant's hands: a December 2020 treatment note with pain management for low back and neck pain radiating down her arms to all ten fingers that was improved with a branch block and steroids and was aggravated by head movement, (R. 21, 399), and it also indicated that Claimant was dropping things, which was not included in the ALJ's summary, (R. 399); a February 2021 pain management treatment note indicating Claimant experienced neck pain radiating to both arms and that her hand muscle grip was 3/5, (R. 22, 474, 478); a cervical branch block in August 2021, and a cervical spine radiofrequency denervation in September 2021, (22, 490–92, 496–98); an open right thumb release for trigger thumb and cyst removal in November 2021, after cortisone injections failed, and Claimant reported experiencing no pain at her post-operative follow-up visit, (R. 22, 1212–14); a May 2022 orthopedic treatment note for mid and upper back pain showed normal examination findings, (R. 23, 628–32); examination findings from a June 2022 consultative examination with Leslie Dupree, FNP showed bilateral tenderness and swelling in her hands and wrists, but she was able to sequentially touch each finger to her thumb and to make a fist without difficulty, and she was assessed with moderate limitations in manipulative activities, (R. 22–23, 592), and it also indicates her grip strength was reduced to 4/5 bilaterally, which was not mentioned in the ALJ's

6

arms and a positive Hoffmann sign on the left, (R. 757–58); and after receiving cervical medial branch blocks in June 2023, (R. 974), she reported 80% pain relief but also some left upper extremity weakness that the doctor advised was not supposed to be resolved by the injection at that time, (R. 963). Pl.'s Br. [DE-14] at 5–7.

The Commissioner argues that Claimant attempts to support her allegations of difficulty using her hands with instances of neck and shoulder pain in the record, Def.'s Br. [DE-16] at 7–9, but the records detailed above indicate that Claimant's neck pain radiated to her hands and so the two are related, and several of the records cited by the Commissioner related to Claimant's neck pain also reference pain in her arms and fingers and that she dropped things, *id.* (citing, *e.g.*, (R. 399, 474, 478, 485, 490, 532, 577, 794, 800, 929)). The Commissioner also cites records indicating Claimant's condition was improved at times, as evidenced by negative examination findings and reports of less pain, and argues that there is no contradictory evidence in the record and no reason to disturb the ALJ's findings. *Id.* 7–11 (citing (R. 399, 491, 578, 758, 800, 963, 1295)). As demonstrated by the summary of evidence above, the record here does contain contradictory evidence regarding the functional ability of Claimant to perform manipulative tasks with her hands where she at times experienced pain, numbness, swelling, and reduced strength. This requires remand not, as the Commissioner argues, because Claimant asks the court to re-weigh the evidence, but rather because the ALJ failed to assess a relevant function in the presence of contradictory evidence, and it is not the court's role to do so in the first instance. *See Mascio*, 780 F.3d at 636 (concluding "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record . . . .") (citation omitted); *Honeycutt v. Kijakazi*, No. 5:20-CV-438-RJ, 2022 WL 708523, at *5–6 (E.D.N.C. Mar. 9, 2022) (remanding case where ALJ failed to perform a function-by-

8

summary, (R. 591); treatment for neck and back pain continued throughout 2022 and 2023, and an MRI showed some mild and moderate stenosis, moderate neural foraminal narrowing, and a small disc protrusion, and it was noted she may be a candidate for an anterior cervical discectomy and fusion and she was considering an epidural steroid injection for her thoracic spine, (R. 24, 605–26, 722–810, 893–914). The ALJ discussed three treating source statements but none of them addressed manipulative limitations other than reaching. (R. 24–26). The state agency reviewing doctors opined that Claimant did not have limitations in handling, fingering, and feeling, and the ALJ did not discuss that particular portion of the opinions but generally agreed with their findings because they reviewed the majority of Claimant's records and their findings appeared consistent with the overall record. (R. 27, 73, 82).

In addition to the above records noted in the ALJ's decision, Claimant points to a January 8, 2021 visit for chronic neck pain where Plaintiff reported bilateral numbness and tingling in her hands, (R. 577); a February 2022 report of bilateral hand pain, (R. 555); a March 2022 report of 7 of 10 arm pain with weakness and numbness in the arms or hands, and she answered affirmatively to the question, "Have you noticed clumsiness, difficulty buttoning buttons or picking up small objects like coins?" (R. 668, 671–72); in November 2022, she reported worsening of dropping things and had a positive Hoffmann sign on the left, (R. 800), and an MRI to evaluate for cervical myelopathy due to chronic neck pain radiating with numbness and tingling in both hands revealed mild central canal stenosis at C4-5, C5-6, and C6-7 and moderate neural foraminal narrowing on the left at C6-7, (R. 805–06); she reported continued numbness down her arms and dropping things in December 2022, (R. 794); in January 2023, Claimant continued to report radicular symptoms bilaterally in the upper extremities, reduced range of motion, strength, sensation, and flexibility, (R. 764–65), as well as neck pain radiating down her

7

function evaluation of Claimant's ability to reach, handle, and finger with the dominant upper extremity when formulating the RFC, and the "depth and ambivalence" of the medical records precluded meaningful review).

The Commissioner also points to the state agency reviewing doctor's rejection of the consultative examiner's opinion that Claimant had moderate manipulative limitations to support the ALJ's decision. Def.'s Br. [DE-16] at 13–14 (citing (R. 22–23, 81, 588–94)). The ALJ expressly discussed the consultative examiner's opinion and appeared to interpret "manipulative limitations" with only a limitation on "reaching," which the ALJ found to be persuasive, but did not consider handing or fingering, which are also manipulative functions. (R. 23); 20 C.R.F. § 416.945(b). Furthermore, the fact that the Claimant could "sequentially touch each finger to her thumb and to make a fist without difficulty" one time during the examination, while relevant, says little about the ability to do so without limitation over the course of a workday, and there was subsequent material evidence in the record, discussed above, that the state agency reviewing doctor did not have the benefit of considering. Therefore, the state agency reviewing doctor's rejection of the consultative examiner's opinion that Claimant had moderate manipulative limitations is not sufficient substantial evidence on which to affirm the ALJ's decision.

It is also particularly problematic that the ALJ failed to discuss or even acknowledge Claimant's testimony regarding her difficulty holding things with her hands, where the Fourth Circuit has repeatedly admonished the agency for failing to adequately consider a Claimant's subjective statements regarding their limitations. *See, e.g., Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (failure to adequately consider subjective complaints required remand where the ALJ "made no mention of the intensity or persistence of Oakes's complaints in analyzing his residual functional capacity.") (citing *Mascio*, 780 F.3d at 640); *Honeycutt*, 2022 WL 708523, at

9

*6 (finding the ALJ erred by failing to "explain both how he evaluated Claimant's subjective statements and his reasoning regarding the upper extremity limitations in the RFC."). Just as the court is not charged with re-weighing evidence, it should not undertake credibility determinations. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." ). Accordingly, on remand, the ALJ should consider Claimant's testimony and the other relevant record evidence to evaluate Claimant's ability to perform manipulative activities, i.e., handling, fingering, and feeling.

## VI.  CONCLUSION

For the reasons stated above, the final decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered, this 2nd day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

10